UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


UNITED STATES OF AMERICA            )
                                    )
v.                                  )        No.  2:12-CR-80
                                    )
KEVIN MICHAEL ANDIES, *ET AL.*      )


## REPORT AND RECOMMENDATION

On February 29, 2012, Tennessee Circuit Court Judge Kendall Lawson of the Third Judicial District issued a warrant to search defendant Andie's residence in Rogersville, Tennessee for evidence of methamphetamine manufacturing.  This defendant has filed a motion to suppress any evidence seized upon the execution of that search warrant, alleging that the warrant failed to establish probable cause.  (Doc. 21).  That motion has been referred to the magistrate judge pursuant to the standing order of this Court and 28 U.S.C. § 636.  A hearing was held on October 31, 2012.

Detective Jeff Hilton of the Hawkins County Sheriffs Department was the applicant for the search warrant, and his application was supported by his affidavit.

**SCOPE OF THIS COURT'S REVIEW**

Generally, when a defendant asks a court to suppress evidence seized upon the execution of a search warrant on the basis that there was no probable cause to issue that warrant, the court limits its review to the "four corners" of the affidavit submitted to the judge who issued the warrant.  There is an exception to this limited scope of review: false

statements in an affidavit, by definition, cannot be a part of any finding of probable cause. Therefore, subject to the discussion which follows in the succeeding paragraph, a defendant may attack the truthfulness of any fact set out in an affidavit filed in support of a search warrant pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).

The factual recitations in an affidavit are presumed to be true. If, however, a defendant seeks to challenge a search warrant on the basis that there was no probable cause because certain of the facts in the affidavit were false, he must make a substantial *preliminary* showing that (1) the statements were made knowingly and intentionally, or with reckless disregard for the truth, and (2) the false statements were necessary to the finding of probable cause. Only if both of the foregoing requirements are satisfied is the court required to hold a hearing. The defendant's assertions must be more than conclusory, and they must be supported by more than a desire to cross examine. The "deliberate falsity" must be that of the affiant, not that of the informant. *Franks*, *supra*, 438 U.S. at 171. Lastly, no hearing may be held if the affidavit is still sufficient for probable cause purposes if the false statement is excised. *Franks*, 438 U.S. at 155-56.

In Detective Hilton's affidavit, his recitations regarding unnamed complainants really add nothing to the probable cause equation; they merely explain why the officers themselves had suspicions regarding defendant's activities. Those statements concerning the unnamed complainants could be completely removed from the affidavit without affecting the ultimate probable cause determination.

Defendant failed to make a substantial preliminary showing that Detective Hilton

2

falsely or recklessly stated in his affidavit that the Sheriffs Office had received reports of defendant's criminal activity. Additionally, those statements could be removed entirely from the affidavit without affecting the probable cause analysis. For either of these reasons, defendant was not entitled to a *Franks* hearing, and the scope of this court's review is limited to Detective Hilton's affidavit.

## HILTON'S AFFIDAVIT

Although the affidavit obviously speaks for itself, a synopsis will be helpful to understand the discussion regarding probable cause:

1. Detective Hilton is a certified Clandestine Laboratory Investigator, and a member of the Tennessee Methamphetamine & Pharmaceutical Task Force.

2. Detective Hilton had investigated and "processed" several methamphetamine laboratories, and he is aware of the methods and chemicals used in the manufacturing of methamphetamine.

3. On February 27, 2012, the Hawkins County Sheriffs Department was told by an anonymous person that defendant was involved in the manufacture of methamphetamine.

4. Prior to this time, the Narcotics Unit of the Hawkins County Sheriffs Department had received "numerous complaints" that defendant was manufacturing methamphetamine and that he possessed automatic weapons.

5. Defendant's criminal history revealed a felony conviction in Hawkins County in 2002 for possession of methamphetamine, as well as a Schedule VI drug, for resale, and that he was charged in 2005 with unlawful possession of a weapon.

3

6.  On February 28, 2012, an employee of the Food City Grocery Store in Rogersville told Sergeant Lynn Campbell of the Sheriffs Department that an "unknown female" had purchased a quantity of dry ice.

7.  Detective Hilton knows that dry ice is a "necessary component" needed to manufacture methamphetamine.

8.  This "unknown female" was a passenger in a white Nissan X-terra bearing Tennessee license tag number 003-YPC.

9.  Detective Hilton and Sergeant Campbell went to the Food City Grocery Store to review the surveillance tapes of the purchase, and both identified the "unnamed female" to be Brandi Albright.

10.  The officers checked the tag number on the vehicle, which showed that the Nissan vehicle was registered to Rita Andies of 437 Oak Grove Road in Rogersville.

11.  Both Detective Hilton and Sergeant Campbell knew that Rita Andies is defendant's mother.

12.  Based upon what the officers learned, Sergeant Campbell went to 437 Oak Grove Road in Rogersville and saw the white Nissan X-terra, with the tag number 003-YPC, parked in the driveway.

13.  Detective Hilton stated in his affidavit that a criminal history check of Brandi Albright revealed that she had a 2010 felony conviction in Hawkins County, Tennessee for promoting the manufacture of methamphetamine.  Detective Hilton also confirmed through the Tennessee Methamphetamine and Pharmaceutical Task Force data base that Brandi

4

Albright had purchased 2.5 grams of pseudoephedrine three days earlier at the Wal-Mart store on Stone Drive in Kingsport.

14. On February 29, 2012, at 2:15 in the morning, Detective Hilton and Sergeant Campbell conducted surveillance at 437 Oak Grove Road in Rogersville, and they detected a strong odor consistent with a methamphetamine laboratory.

15. As a result of the odor they detected, officers decided to pursue a "knock-and-talk" investigation; as they approached the front door of defendant's residence, the odor became stronger.

16. In the bed of the pickup truck both Hilton and Campbell saw a bag that contained a bottle, with tubing attached to the cap of the bottle which Hilton recognized as a device used in the manufacture of methamphetamine. That bottle also had an ammonia smell.

Based upon this information, Circuit Judge Lawson issued a warrant to search 437 Oak Grove Road in Rogersville.

**LAW**

Probable cause for the issuance of a search warrant exists "if the facts and circumstances are such that a reasonably prudent person would be warranted in believing that an offense had been committed and that evidence thereof would be found on the premises to be searched." *United States v. Beasase*, 521 F.2d 1306, 1307 (6th Cir. 1975).

Probable cause must be based upon the "totality of the circumstances" described in the affidavit, *Illinois v. Gates*, 461 U.S. 213, 238 (1983). The judge, whether the issuing magistrate or the one sitting in post-execution judgment, therefore must read the affidavit as

5

a *whole*, *United States v. Humphrey*, 140 F.3d 762, 764 (8th Cir. 1998). The judge must

avoid parsing the affidavit into discrete issues and then deciding if each piece in isolation of

all the others establishes probable cause. This is the "divide-and-conquer" approach roundly

disapproved in *United States v. Arvizu*, 534 U.S. 266 (2002).

An affidavit filed in support of an application of a search warrant must be interpreted

in a commonsensical fashion, rather than a hyper-technical, manner, *Illinois v. Gates*, 462

U.S. 213, 236 (1983).

Lastly, a reviewing court should afford "great deference" to the issuing magistrate's

determination of probable cause, *Id*.

**ANALYSIS**

Defendant makes a series of arguments concerning the various facts set out in Hilton's

affidavit, and each will be addressed in turn:

> *HILTON'S AFFIDAVIT DID NOT RELATE ANY INFORMATION REGARDING
> THE CREDIBILITY AND RELIABILITY OF THE ANONYMOUS PERSON WHO
> REPORTED THAT DEFENDANT WAS MANUFACTURING
> METHAMPHETAMINE, NOR DID HIS AFFIDAVIT RECITE ANY INFORMATION
> REGARDING THE RELIABILITY AND CREDIBILITY OF THOSE INFORMANTS
> WHO REPORTED EARLIER THAT DEFENDANT MANUFACTURED
> METHAMPHETAMINE AND POSSESSED AUTOMATIC WEAPONS.*

Defendant's argument in this regard, and several others hereafter, flies squarely in the

face of the requirement that a court determine probable cause based upon a totality of the all

the circumstances. Likewise, defendant asks that this court look at the facts regarding the

anonymous informant in isolation without taking into account further information developed

by Hilton. In the main, the information imparted by the anonymous informant describes what

6

initially motivated Detective Hilton to commence his investigation. As discussed earlier in this report, the reports of the unnamed complainants add nothing to the determination of probable cause.

> *THERE IS NOTHING INHERENTLY ILLEGAL ABOUT PURCHASING DRY ICE, AND THAT A PURCHASE OF DRY ICE, WITH A TAG NUMBER ON A VEHICLE, "WAS NOT AN APPROPRIATE TRIGGER FOR AN INVESTIGATION INTO THIS PERSON'S IDENTITY OR ACTIVITIES."*

This is an argument not well understood by this magistrate judge. Defendant seems to be arguing that Detective Hilton had no legal authority to commence an investigation; this magistrate judge knows of no constitutional provision that establishes a threshold that is necessary merely to commence an investigation.

> *THE AFFIDAVIT FAILED TO ADVISE THE ISSUING JUDGE "HOW THE VEHICLE AND TAG NUMBER CAME TO BE KNOWN BY [HILTON]."*

To be sure, Hilton's affidavit does not explicitly state how he learned the tag number on the car. But recalling that an affidavit is to be read in a commonsensical fashion, and not in a hyper-technical fashion, it is clear that Hilton acquired that information from Food City's surveillance tape.

> *THE AFFIDAVIT FAILED TO RECITE HOW HILTON WAS ABLE TO IDENTIFY THE WOMAN WHO PURCHASED THE DRY ICE AS BRANDI ALBRIGHT.*

Detective Hilton's affidavit states simply and matter-of-factly that both he and Sergeant Campbell identified the unknown female to be Brandi Albright. If a person states that he "knows" another individual, and there being no reason to suspect that the person is telling an outright lie about recognizing that individual, then there is no reasonable basis

7

upon which to insist that the person establish the source of his knowledge. This is a long way of saying that defendant is asking this court to analyze the affidavit in a hyper-technical manner and disdain the application of common sense.

> *HILTON'S AFFIDAVIT FAILED TO RECITE HOW DEFENDANT AND RITA ANDIES WERE "KNOWN TO BE RELATED," AS A RESULT OF WHICH THERE WAS NO BASIS TO PRESUME THAT DEFENDANT SOMEHOW WAS IMPLICATED IN MANUFACTURING METHAMPHETAMINE.*

Similar to what was stated in the paragraph preceding, Hilton and Campbell knew Rita Andies; they knew defendant; and they knew Rita Andies was defendant's mother. Hilton's statement that he *knew* Rita Andies was defendant's mother is quite sufficient to establish that fact for probable cause purposes, unless defendant has evidence that Hilton had no such knowledge and simply chose to lie.

At this point, all the facts related in the affidavit reveal the following: defendant had a reputation for manufacturing methamphetamine; Brandi Albright, also associated with the manufacture of methamphetamine, purchased dry ice, a component of the methamphetamine manufacturing process; three days earlier, Brandi Albright purchased another component of methamphetamine manufacturing, pseudoephedrine; Brandi Albright was riding in Rita Andies' car, and Rita Andies is defendant's mother.

> *THE ALLEGATION THAT THE ODOR OF A METHAMPHETAMINE LABORA-TORY AT 2:15 A.M. "YIELDED THE NEED FOR A KNOCK-AND-TALK WAS CONCLUSORY AND ILLOGICAL."*

Once again, defendant seems to be arguing that there is some legal threshold that an officer must pass before he may initiate an investigation, in this case, a "knock-and-talk."

8

Defendant cites no authority for this proposition, because there is none. There is nothing constitutionally impermissible in an officer going to a person's door to talk to him. Defendant could have answered the officer's knock, or he could have declined to do so; if he answered the door, he could have talked, or not, as he chose.

> *THE CIRCUMSTANCES "DO NOT ALLOW FOR PLAIN-VIEW" OF THE BOTTLE CONTAINING THE SMELL OF AMMONIA IN THE BED OF THE PICKUP TRUCK.*

An officer may seize items "in plain view" if that officer is lawfully present and the incriminating character of the item is "immediately apparent." *Horton v. California*, 496 U.S. 128 (1990). Of course, in this case, Detective Hilton did not "seize" the bottle; he merely noted its incriminating character, and he subsequently included what he saw within the affidavit submitted to Judge Lawson. Apparently it is defendant's argument that Detective Hilton made his observation from a position where he had no right to be, as a result of which what he saw could not constitute a factor in the probable cause analysis.

Again, there was nothing constitutionally impermissible in Detective Hilton approaching defendant's door to ascertain if defendant was willing to talk to him. As the officers approached the house, they noted that the odor of the methamphetamine manufacturing process grew stronger, and they also noted evidence of methamphetamine manufacturing in the bed of the pickup truck parked next to the house. The officers were not obliged to wear blindfolds as they otherwise lawfully approached defendant's front door.

**CONCLUSION**

When Detective Hilton's affidavit is read in its entirety, and every fact therein

9

considered in light of all the others, even without his statements regarding what the Sheriffs Office had been told by unnamed complainants, there was probable cause to believe that methamphetamine was being manufactured in the residence at 437 Oak Grove Road in Rogersville, Tennessee.  It is recommended that defendant's motion to suppress (Doc. 21) be denied.[1]

Respectfully submitted,

s/ Dennis H. Inman
United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived.  28 U.S.C. § 636(b)(1).

10